UNITED STATE DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>MATTHEW ANTHONY MARSHALL,<br><br>                              Defendant. | 20-CR-32-DWM-M<br><br><br>SEALED ORDER |

Matthew Anthony Marshall, the defendant, has been charged with multiple counts of fraud, money laundering, and tax evasion. Foundational to the government's case is the allegation that Marshall represented himself to be a former intelligence officer and elite force reconnaissance operative. Marshall has responded that he was employed in the intelligence community, and he has sought to disclose allegedly classified information to support his defense. As a result of this allegedly classified information, the parties have triggered litigation under the Classified Information Procedures Act ("CIPA"), 18a U.S.C. app. 3. Procedurally, this case is a bit awkward because it is Marshall invoking the CIPA process, where ordinarily it is the government. Having proceeded through § 5 of CIPA, currently pending before the Court is the government's § 6 notice of objections to Marshall's

1

§ 5 notice and reply. For the reasons explained below, nearly all of the government's objections are sustained.

## BACKGROUND

The government charged Marshall with a ten-count indictment alleging wire fraud (Count I), money laundering (Counts II–VII), and tax evasion (Counts VIII–X). (Doc. 1.) The indictment alleges that Marshall executed his scheme to defraud "John Doe"[1] by claiming "he was a former CIA agent and a former member of an elite Force Reconnaissance unit in the United States Marine Corps who had engaged in covert missions around the world." (*Id.* at 2.) It is the government's position that these representations are a material part of the case. CIPA § 6 Hearing Tr. 120:1–15 (April 23, 2021). According to the government, in reality "Marshall was never employed as a CIA agent and never employed, deployed or otherwise associated with an elite force Reconnaissance unit in the United States Marine Corps." (*Id.*)

Marshall has repeatedly averred he was employed by the CIA. (*See, e.g.*, Doc. 48.) Consequently, Marshall indicated that he intended to support his claims of involvement with the United States intelligence community with classified information. Such information implicates CIPA, which "creates a pretrial

---

[1] "John Doe" has been identified as Michael Goguen, Marshall's former employer and the financial sponsor of Amyntor. (*See, e.g.*, Doc. 48).

procedure for ruling upon the admissibility of classified information." *United States v. Klimavicus-Viloria*, 144 F.3d 1249 (9th Cir. 1998).

Pursuant to CIPA procedures, Marshall provided notice to the government and to the Court that he "reasonably expect[ed] to disclose or cause the disclosure of classified information." (*See* Doc. 65 (filed under seal per CIPA § 5); *see also* Marshall's § 5 notice.) The government responded to Marshall's § 5 notice, arguing that it was insufficient, and after being ordered to do so, (*see* Doc. 84), Marshall subsequently filed a more detailed § 5 reply. The Court held a hearing on Marshall's § 5 notice on March 10, 2021, and determined that Marshall had provided sufficient notice under § 5.

Thus, currently pending before the Court is the government's CIPA § 6 notice of objections to the classified information identified in Marshall's § 5 notice and reply. The Court held an in camera hearing on April 23, 2021. As required, these written findings are set forth on each item of classified information noticed by Marshall. Ultimately, most of the information Marshall seeks to disclose at trial fails to pass evidentiary muster. Consequently, it will be excluded. Nonetheless, several of the government's objections are denied. Marshall will be permitted to offer those items, albeit very narrowly, at trial and subject to the ordinary rules of evidence.

## ANALYSIS

### I.   Legal Framework

CIPA § 6 "guides the procedures for making determinations concerning the use, relevance, or admissibility of classified information." *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013). These procedures aim to achieve an equilibrium between interests of national security and "a defendant's right to a full and meaningful presentation to his claim to innocence." *Id.* at 903. "CIPA does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *Id.* at 904. Therefore, the Federal Rules of Evidence apply, and at the CIPA § 6 stage the Court must consider whether the evidence is relevant, admissible, and not otherwise excludable for unfair prejudice, confusion, waste of time, or other reasons. *United States v. Rewald*, 889 F.2d 836, 852 (9th Cir. 1989). The defendant bears the burden of making a threshold showing that the classified information he seeks to disclose at trial is admissible, meaning that it is relevant and helpful under Federal Rule of Evidence 401 and not barred by an exception under Rule 403. *See United States v. Miller*, 874 F.2d 1255, 1277 (9th Cir. 1989). The district court has broad discretion to determine whether the slight probative

4

value of classified information is substantially outweighed by the danger of confusion of the issues and misleading the jury. *See Rewald*, 889 F.2d at 852.

Here, in most instances, Marshall fails to show that the classified information he seeks to disclose is relevant and admissible. The problem is the government has made the issue of Marshall's past employment with the CIA a foundational aspect of the charges against him, so Marshall will be permitted to rebut that charge in a limited manner and in a way that does not disclose classified information.

## II.    Items of Classified Information

Marshall's § 5 notice and reply indicate that he expects to disclose or cause to be disclosed roughly 15 items of classified information. However, as the government notes, Marshall's most recent § 5 filing indicates that he no longer expects to call ▨▨▨▨▨▨▨ as a witness who could potentially testify to classified information. Accordingly, ▨▨▨▨▨ is not allowed to testify about any classified or potentially classified information at trial.

There are two remaining witnesses whom Marshall plans to call at trial to provide testimony on classified information: John Maguire and Mary Beth Long. (*See* Marshall's § 5 reply at 2.) In its § 6 notice, the government has categorized the testimony of each of these two witnesses: the government identifies nine topics of expected testimony from Maguire, (*see* Government's § 6 notice at 58–60), and

five topics of expected testimony from Long, (*see id.* at 60–61). Marshall does not take umbrage with this categorization in his § 6 response. For this reason, the Court analyzes the topics identified by Marshall as categorized by the government.

## A. Testimony from Maguire

### 1. Maguire's Background

The government advances three objections to testimony from Maguire about his own background: it is irrelevant; it fails a Rule 403 balancing test; and it would result in harm to national security. (Gov. § 6 notice at 61.) None of these objections are persuasive to the extent that Maguire may testify at a non-classified level about his position with the CIA and then his subsequent work as a private security contractor.

Relevance is a low bar, and under Rule 401 evidence is relevant when it has the tendency to make a fact more or less probable than it would be without the evidence and that fact is material to the action. The government made the choice to charge the indictment so that Marshall's employment (or lack thereof) with the CIA was a material and central component of the wire fraud and money laundering counts. Indeed, at the April 23 hearing, the government argued Marshall's CIA employment is "material" to the case. Tr. 120:1–15. The government cannot have it both ways: it cannot claim Marshall lied about being in the CIA and then preclude all information potentially related to Marshall's defense that he *was* in the

CIA. This is particularly true where, as here, Maguire's testimony may be cabined so that it does not disclose any classified information. The fact that Maguire was indisputably employed with the CIA and then employed with several private security enterprises—where he apparently got to know Marshall—is relevant to making the fact of Marshall's CIA employment more or less true.

Similarly, allowing Maguire to testify that he was employed by the CIA and then employed in private security does not fail a Rule 403 balancing test. It may be prejudicial to the government that a confirmed, retired CIA agent could testify that he knows Marshall and has worked with him, but the Rule only prohibits prejudice that is unfair, not evidence directly challenging the government's assertion as material to its case. By making Marshall's CIA claims material to the charges against him, the government cannot reasonably argue that allowing an associate of Marshall's to say Marshall was in the CIA is unfairly prejudicial. Additionally, by limiting Maguire's background testimony to a general, non-classified overview of his career, there is little risk of confusing the issues or misleading the jury. Rather, this sort of background testimony would be helpful to clearly understanding the rest of Maguire's testimony, and would likely be helpful to determining a fact in issue. *See* Fed. R. Evid. 701(b). The Court notes, based on Maguire's CIPA testimony, that defense counsel and the prosecutor must take

measures to ensure that Maguire is cabined within the enumerated four corners of this order.

Limiting Maguire's background testimony only to non-classified statements about his past employment alleviates national security concerns. Maguire is not allowed to testify about specific renditions, missions, task forces, or government contracts, nor will he be permitted to discuss practical implementation of his CIA or private contractor work. He is prohibited from disclosing any information concerning government initiatives, or any other classified information. Thus, the government's objection to the totality of Maguire's personal background is overruled. But Marshall is cautioned that Maguire may testify only to non-classified background information, and given his argumentative testimony at the CIPA hearing he must be controlled.

### 2. Marshall's whereabouts from 1996–2000

The government objects to testimony from Maguire on Marshall's whereabouts between 1996 and 2000 on the grounds that it is not relevant or helpful to the defense, fails the Rule 403 balancing test, lacks personal knowledge so it is founded on hearsay statements, and results in harm to national security. (Gov. § 6 notice at 62.) Marshall's response is unavailing. Marshall admits "[t]here is documentation that Mr. Marshall worked for the Indiana State Police from 1996-1999." (Marshall § 6 response at 4.) His response indicates that, even

by Marshall's own narrative, only one year of the four-year period (1999) is subject to dispute. (*See also id.* at 5.)

This period of time may be relevant to Marshall's defense: if Marshall was never enrolled at ███████, then likely he could not have become a CIA agent. (*See* Gov. § 6 notice at 9 ("If [Marshall] did not attend the [Field Tradecraft Course] in 1996, then all of his assertions concerning future service with the CIA fall slat, since his alleged attendance at that specific course in that specific year forms the foundation of the rest of his fabricated stories.")). Thus, proving that he was an enrolled student at ███████ would be relevant and helpful to Marshall's defense that he did not lie about his CIA service. However, as the government points out, relevancy is the first of several hurdles facing Marshall on this item of evidence, and he fails to clear them all.

The most significant hurdle for Marshall is that Maguire does not have personal knowledge of Marshall's alleged whereabouts during this time. *See* Tr. 11:13–15. Although Maguire apparently coordinated the Counter Terrorism Course at ███████ in 1999, (*see* Marshall § 5 reply at 4), he testified at the April 23 hearing that he believes he was present at ███████ and had passing interactions with Marshall, but ultimately that he did not personally supervise or train Marshall in 1999. *See* Tr. 13:3–25; 14:1–19. Maguire's testimony on this subject is based on hearsay. Marshall has the burden of showing that such hearsay

9

would nevertheless be admissible, *Miller*, 874 F.2d at 1277, and he has not done so.

Thus, the government's objections to Maguire's testimony about Marshall's whereabouts from 1994–2000 are sustained. Maguire is not permitted to testify on this topic.

### 3. Circa 2000 ████████████████

Marshall represented that Maguire would "testify that beginning in January of 2000, Mr. Marshall was involved in ███████████████████

████████████████████████████ (Marshall's § 5 reply at 5.)

Disconcertingly, these activities allegedly ███████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████ The government objects on the same four grounds as stated above: relevance, unfair prejudice, lack of personal knowledge, and harm to national security. (Gov. § 6 response at 63.)

There is no rational reason to explain how testimony of Marshall's alleged involvement in ████████████ is relevant to his defense, apart from perhaps tangentially supporting his broad claim of involvement with the CIA. Regardless, such testimony undoubtedly fails a Rule 403 balancing test. *See Rewald*, 889 F.2d 836 ("Rule 403 recognizes that as the probative value of evidence decreases, the

potential increases for it to be substantially outweighed by the dangers identified in the rule.").  While the government invited some testimony about the CIA by nature of its indictment, that invitation certainly does not give Maguire carte blanche to testify about topics that are only tenuously related to the defense, particularly where Maguire has no personal knowledge.  *See* Tr. 14:11–19.

Thus, weighing the negligible relevance of testimony on the CIA's alleged ███████████████████ in which Marshall purportedly participated—against the dangers of confusion of the issues, misleading the jury, and harm to national security, Maguire is prohibited from testifying in any way, directly or by inference, on this topic.

### 4. Marshall's Alleged Activities ███████████ Circa 2001

Marshall also seeks to have Maguire testify that, between January 2000 and September 2001, Marshall was ████████████████████████ ████████████████ ████████████████████████ (Marshall's § 5 notice at 5.)  Again, the government objects that such testimony is irrelevant, inadmissible under Rule 403, lacks personal knowledge, and results in harm to national security.  (Gov. § 6 notice at 63.)

As a threshold matter, this testimony may be relevant because the alleged conduct—███████████████—is similar to the conduct Marshall claims he was actually performing for Goguen.  ████████████████████████

[REDACTED] The testimony could have the effect of making it more likely that Goguen employed Marshall [REDACTED] if Marshall had in fact disclosed to Goguen that he was involved in [REDACTED] activities in the past. *See* Fed. R. Evid. 401. Even so, Marshall must prove not only that the subject is relevant and helpful, but also admissible. It is not.

Maguire has no personal knowledge of Marshall's whereabouts during this time. *See* Tr. 32:11–25; 33:1–25. His claimed knowledge is based on hearsay, and Marshall has not shown that an exemption or an exception to the hearsay rule applies. Furthermore, Maguire's testimony on this topic does pose a significant threat to national security. (*See* Gov. § 6 notice, Ex. 2 at ¶ 35). Consequently, Maguire is not permitted to testify on this topic.

### 5. Marshall's Whereabouts 2001–2004

Marshall provided notice that Maguire would testify to Marshall's alleged activities between 2001 and 2004. These activities apparently included [REDACTED]

██████████████████████████████████

██████████████████████████████████

████████████████ . (Marshall's § 5 reply at 5–9.) The government objects that this testimony is irrelevant, inadmissible under Rule 403, is not based on personal knowledge, and would result in harm to national security. (Gov. § 6 notice at 64.)

This evidence may be tenuously relevant to Marshall's claims that he was in the CIA. And, based on Marshall's representations in his § 5 reply, Maguire "provided directives" and "tasked" Marshall with certain things during this period; if that were the case, then Maguire would apparently have the requisite personal knowledge to testify about this time period. However, at the April 23 hearing, Maguire testified that he was unaware of what Marshall was doing ████████████ at least until 2002. Tr. 32:16–21. Maguire also testified that Marshall was working not directly for him but ████████████ and that he had a conversation with Marshall ████████ in 2004. *Id.* at 33:3–25. Considering his sworn testimony, Maguire does not possess firsthand knowledge of Marshall's whereabouts during this time.

Regardless, such extensive testimony about Marshall's alleged whereabouts would confuse the issues, mislead the jury, and result in waste of time, not to

mention the national security concerns such testimony implicates. (*See* Gov. § 6 notice, Ex. 2 at ¶¶ 35–36.) Any such testimony is excluded under Rule 403.

Consequently, Maguire is prohibited from testifying on this topic.

### 6. Payment of Clandestine Officers

Marshall argues that "as a clandestine officer, [he] was paid for his services to our country." (Marshall § 5 reply at 10.) To this end, he provided notice that Maguire would testify that Marshall was paid ▮▮▮▮▮▮▮▮▮▮▮▮ during his time ▮▮▮▮▮▮▮▮▮▮▮ though Marshall also noted that "Maguire does not intend t ▮▮▮▮▮▮▮ during his testimony at trial" ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*) ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ The government objects on the grounds that this testimony is irrelevant, inadmissible under Rule 403, lacks personal knowledge, and harms national security. (Gov. § 6 notice at 64.)

Given Marshall's representation that Maguire would not actually ▮▮▮▮ ▮▮▮▮▮▮ in his testimony, it is difficult to imagine how this testimony would unfold. It most likely would muddy the issues, and it is hard to imagine how Maguire could testify to Marshall's payment ▮▮▮▮ since he has no personal knowledge of this payment. Even if there is slight probative value in providing testimony as to how Marshall was paid during his alleged time with the CIA, that

14

value is far outweighed by other concerns under Rule 403 and the risk to national security that could result from ███████████████████████ *See Rewald*, 889 F.2d at 853.

Maguire is not permitted to testify about the ████████████ ███████████████████████████.

### 7. Marshall's Whereabouts 2004–2007

Marshall indicated that he intended Maguire to testify that Marshall worked for Blackwater between 2004 and 2007, and specifically he would testify that ███████████████████████████████████████

(Marshall § 5 reply at 11.) Marshall further indicated that Maguire would testify "that while Mr. Marshall was working for Blackwater ████████ Mr. Maguire was ████████████████████████ and that he and Mr. Marshall regularly ████████████████████████████ (*Id.*) Maguire would apparently testify to ███████████████████████ ██████████████████████████ (*Id.* at 12.) The government objects on the grounds of relevance, inadmissibility under Rule 403, lack of personal knowledge, and harm to national security. (Gov. § 6 notice at 64.) Its objections are aimed at the "topic as generally stated and specifically the baseless claims that ████████████████████████ ████████████████████████ (*Id.*)

15

This testimony is irrelevant. Marshall's argument on relevance boils down to the claim that "it strains credulity" to think that Blackwater would hire Marshall and put him in a leadership position if he did not have the specialized training with the CIA that he claims to have. (Marshall § 6 response at 5.) Thus, according to Marshall, his Blackwater employment is an endorsement of his asserted military record and therefore relevant to his defense that he was a CIA agent. Such an argument is too attenuated and circumstantial to support even a reasonable inference of relevance. Additionally, Marshall's employment with the CIA, not with Blackwater, is the alleged fraudulent hook, and admitting testimony on Marshall's involvement with alleged Blackwater renditions tips the Rule 403 scales on balance to needless confusion of the issues.

Maguire is not permitted to testify on this topic.

### 8. Marshall's Whereabouts 2010–2013

According to Marshall, Maguire would testify that Marshall worked as a contractor with the State Department's "Antiterrorism Assistance Program," working in U.S. embassies in Mexico, Amman, and Bogota. (Marshall's § 5 reply at 13.) The government objects that this testimony is irrelevant, inadmissible under Rule 403, lacks personal knowledge, and harms national security. (Gov. § 6 notice at 64.)

Maguire has no personal knowledge about this claim. *Cf.* Fed. R. Evid. 602.

Maguire's professional background is with the CIA, and he has not claimed

involvement with the State Department, nor has he averred any personal

knowledge related to Marshall's supposed activities during this time. Moreover,

the relevance of this testimony is questionable at best, and whatever weak

relevance it holds is outweighed in a Rule 403 balancing test because the testimony

risks confusion of the issues, misleading the jury, and waste of time.

Maguire is not permitted to testify about Marshall's whereabouts between

2010 and 2013.

### 9. Meeting Regarding █████████████

Marshall states that Maguire would testify that in 2015 he and Marshall were

involved in planning a ███████████████████████████████

████████████████████████████████ (Marshall § 5 reply at

14.) The government objects on the grounds that this testimony is irrelevant,

inadmissible under Rule 403, lacks personal knowledge, and harms national

security.

The fact that Marshall was included in an allegedly ████████████

████████ coordinated by the United States government is arguably relevant to his

defense that he was, at one time, a CIA agent. In addition, Maguire testified that

████████████████████████████████████████████.

17

*See generally* TR 72:9–20. Therefore, he likely satisfies the personal knowledge requirements of Rule 602. But that is not the end of the inquiry. The Ninth Circuit has recognized that "not even bona fide government agents necessarily are permitted to divulge classified information of specific intelligence activities." *Rewald*, 889 F.2d at 853. This prohibition on disclosure—even by confirmed government agents—exists to protect national security and further the objectives of Rule 403. Here, testimony about the planned ███████████ implicates national security concerns. It also risks confusion of the issues and misleading the jury.

Accordingly, Maguire is not permitted to testify on events related to the ███████████.

## B. Testimony from Long

### 1. Mechanics of CIA Operations

Marshall provided notice that Long was "expected to testify about the mechanics of CIA operations." (Marshall § 5 notice at 2.) The government objects to testimony on the "mechanics of CIA operations" as irrelevant, inadmissible under Rule 403, and harms national security. (Gov. § 6 notice at 66.)

From the briefing and Long's own testimony, it is not clear what is meant by "the mechanics of CIA operations." Given this ambiguity, the government's renewed objection under § 5 for insufficient specificity is sustained. (*See* Gov. § 6 notice at 68.) And, since it is unclear what this testimony would encompass, such

testimony is not relevant. Further, this testimony most likely is a broader category encompassing other topics on which Long intends to testify—the role of civilian contractors in ███████████—and so it is likely duplicative. The Court may exclude irrelevant and duplicative evidence, and this evidence also poses a threat to national security. The government's § 5 specificity objection is well-taken, and for that reason alone the evidence, whatever it is, will not be allowed at trial.

Thus, Long is not permitted to testify to the mechanics of CIA operations.

### 2. Role of Civilian Contractors in ████████████

Marshall disclosed his intent that Long would "offer fact testimony, not opinion testimony, about her personal knowledge of the role of civilian contractors in ███████████ and military and other government activities." (Marshall § 5 reply at 16.) The government objects to Long's testimony on the grounds that it is irrelevant, inadmissible under Rule 403, and results in harm to national security.

Long's testimony on this topic could lend some support, however feeble, to Marshall's narrative that he was in the CIA by explaining "that the government did not openly acknowledge the extent of the role of civilian contractors in ████ ███████ and other activities." (Marshall's § 5 reply at 8.) To that extent it may be relevant to Marshall's defense challenging the government's assertion that Marshall never was in the CIA or its affiliates. However, this attempt to show that

"absence of evidence is not evidence of absence" does not surmount the significant risks such testimony would pose to national security.

Consequently, Long is not permitted to testify on the role of civilian contractors in ███████████

### 3. Marshall's Alleged CIA-related Counterterrorism Activities

Marshall provided notice that Long would "testify about Mr. Marshall's clandestine role in counterterrorism activities on the battlefield on behalf of the U.S. government." (Marshall § 5 notice at 8.) The government objects on the grounds that such testimony is irrelevant, inadmissible under Rule 403, lacks personal knowledge, and harms national security. (Gov. § 6 notice at 66.)

Long admitted at the April 23 hearing that she had no personal knowledge about Marshall's alleged CIA-related counterterrorism activities. *See* Tr. 91:2–5. She therefore fails to satisfy the personal knowledge requirement of Rule 603.

As a result, Long is prohibited from testifying on Marshall's alleged CIA-related counterterrorism activities.

### 4. Department of Defense

In his § 5 notice, Marshall indicated that Long would testify about her effort, as the Assistant Secretary of Defense, "in examining how acknowledged and unacknowledged civilian contractor personnel ███████████ would be impacted by a Status of Force[s] Agreement, as well as the policies that required

that individuals in these capacities be excluded from U.S. acknowledgement." (Marshall § 5 notice at 8.) The government objects on the basis that testimony related to Long's role at the Department of Defense is irrelevant, inadmissible under Rule 403, and harms national security.

The government's objections are, for the most part, well-taken. The risk of confusion of the issues, misleading the jury, and waste of time outweigh any potential relevance that may be couched in Long's testimony about the government's treatment of civilian contractors and the Status of Forces Agreement. However, Long is not prohibited from testifying about her professional background as it relates to the Department of Defense so long as that testimony does not implicate classified information or reference why the Status of Forces issue was important. She is permitted to provide the jury with her credentials and include a general overview of her career with the government.

Thus, the government's objections are sustained to the extent that Long is not permitted to testify about the Department of Defense's strategies and analyses of civilian contractors ███. However, she may provide basic testimony that includes reference to her time with the Department of Defense subject to the issues of evidentiary relevance and personal knowledge.

## 5. Private Security Companies

The government seeks to preclude "testimony related to Ms. Long's role with Blackwater and other private companies." (Gov. § 6 notice at 67.) Marshall indicated Long "would testify that she arranged for and accompanied Amyntor personnel at classified briefings . . . regarding Amyntor's role in providing support to a Tier 1 military unit." (Marshall § 5 notice at 9.) The government argues this testimony is irrelevant, inadmissible under Rule 403, and harms national security.

Long's testimony on this topic has limited relevance to Marshall's defense. (*See* Marshall's § 5 reply at 17 (refuting contention that Amyntor was a "sham company" by offering Long's testimony "that Amyntor was developing actual classified projects and attempting to procure actual government contracts").) However, this relevance is minimized by the fact that Marshall has been charged with defrauding Goguen, not defrauding Amyntor. Thus, the testimony risks confusing the issues and misleading the jury under Rule 403. *See also Rewald,* 889 F.2d at 853 ("Rule 403 recognizes that as the probative value of evidence decreases, the potential increases for it to be substantially outweighed by the dangers identified in the rule.") Even so, trial objections as to relevance or personal knowledge or objections based on relevance or personal knowledge or objections based on Rule 403 can resolve the question.

Accordingly, Long is prohibited from testifying about her involvement with private security companies.

## CONCLUSION

For the reasons set forth above, the government's objections are sustained as indicated. However, Maguire and Long are permitted to testify on the narrow topics identified in this order. Additionally, to the extent the government objects to the photographs attached to Marshall's § 5 notice, (Gov. § 6 notice at 67), that objection is denied. The government may renew its objection at trial.

This order is classified and cannot be discussed or revealed to anyone without the appropriate security clearance. If the parties wish to disclose this order to anyone beyond those who were present at the April 23, 2021 hearing they must seek approval from the Court.

The transcript of the proceedings of the April 23, 2021 hearing cannot be disclosed to any parties who lack the appropriate security clearance. The transcript cannot be used at trial, for impeachment or any other purpose, as it is classified as top secret.

Dated this 24ᵗʰ day of April, 2021.

Donald W. Molloy
United States District Judge

16:12 PM