**TIMOTHY J. RACICOT**
**RYAN G. WELDON**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT   59802**
**Phone:   (406) 542-8851**
**FAX:   (406) 542-1476**
**E-mail:      Tim.Racicot2@usdoj.gov**
**              Ryan.Weldon@usdoj.gov**

**S. DEREK SHUGERT**
**Trial Attorney**
**Counterintelligence and Export Control Section**
**National Security Division**
**U.S. Department of Justice**
**Phone:      (202) 305-1629**
**FAX:        (202) 532-4251**
**Email:      Shawn.Shugert@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 20-32-M-DWM** |
| **Plaintiff,** | **CONSOLIDATED RESPONSE TO MARSHALL'S MOTIONS TO DISMISS AND FOR A BILL OF PARTICULARS (DOCS. 162, 164, 166, 168, 170, 172)** |
| **vs.** | |
| **MATTHEW ANTHONY MARSHALL,** | |
| **Defendant.** | |

## INTRODUCTION

Marshall defrauded John Doe by claiming he was a former CIA agent and member of an elite Force Reconnaissance unit in the United States Marine Corps, none of which was true.   (Doc. 143).   Marshall asked John Doe to fund five "off the books" missions for the CIA, totaling $2,355,000, which was transmitted to Marshall via six wire transfers.   (Docs. 37 and 143).   Marshall subsequently moved the money through various financial transactions, which is the basis for the money laundering counts, failed to pay his taxes, and stole Jane Doe's identity to perpetuate the scheme.   (Doc. 143 at 4-9).

Marshall seeks dismissal of counts I, II-VII, and XI for a multitude of reasons: (1) the second superseding indictment is time-barred; (2) the charged wire fraud is duplicitous; (3) the aggravated identity theft count occurred outside the charged wire fraud scheme; and, (4) three money laundering counts occurred prior to the date of the interstate wire charged in count I.   (Docs. 162, 164, 166, 168, 172).   Marshall also requests a bill of particulars to determine if the United States is using the "specific items method of proof" for the tax charges.   (Doc. 170).

All of Marshall's motions should be denied.   The original indictment tolled the statute of limitations, and the second superseding indictment relates back. Money laundering is not required to occur after the date of the alleged interstate wire, and the wire fraud scheme sufficiently identifies one – not two – wires.   A

bill of particulars is unnecessary because the United States has repeatedly identified it will use the specific items method of proof for the tax charges.    The motions should be denied, and this case should proceed to trial.

**ARGUMENT**

A.    **The wire fraud and money laundering counts in the second superseding indictment are within the statute of limitations.**

Marshall argues the United States materially broadened the wire fraud scheme by expanding its length from 35 months to 68 months in the second superseding indictment.    (Doc. 163 at 4-5).    Although the original indictment was within the statute of limitations, Marshall argues the second superseding indictment cannot "relate back" and is time-barred.    (Doc. 163 at 7).    He argues the money laundering counts do not relate back either because the wire fraud alleged in the second superseding indictment is significantly different from the wire fraud alleged in the original indictment.    (Doc. 165 at 4-5).

The return of an initial indictment tolls the statute of limitations.    *United States v. Liu*, 731 F.3d 982, 996 (9th Cir. 2013).    Tolling continues with superseding indictments returned while a previous indictment is pending.    *Id.*    If the counts in the superseding indictment "broaden[ed] or substantially amend[ed]" the charges in the original indictment, the statute of limitations would not have been tolled as to those charges.    *Id.*    To determine if a superseding indictment broadens or substantially amends a charge, courts should consider "whether the

3

additional pleadings allege violations of a different statute, contain different

elements, rely on different evidence, or expose the defendant to a potentially

greater sentence." *Id.*    The central inquiry in a tolling analysis is "notice."    *Id.*

> If the allegations and charges are substantially the same in the old and
> new indictments, the assumption is that the defendant has been placed
> on notice of the charges against him.    That is, he knows that he will
> be called to account for certain activities and should prepare a
> defense.

*Id.*; *see also United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990).

Marshall is on more than sufficient notice in this case.    The second

superseding indictment changed six words, all of which were meant to address

pretrial motions raised by Marshall.    (Docs. 2, 123, 143).    The identified scheme

to defraud, however, has remained exactly the same, including the charges,

essential elements, potential penalties, and supporting evidence.    The money

laundering counts have remained the same throughout without changing any

language.    No new witnesses will be called at trial, no new or different exhibits

will be introduced, and no new discovery was uncovered or produced related to the

second superseding indictment.    The wire fraud scheme was enlarged only to

include the time frame when Marshall sent fake emails to the IRS on November

30, 2018, but the United States always intended to admit that evidence at trial.

Marshall therefore knew what he was defending, and he knew fake documents

were at issue from day one.[1]

The Ninth Circuit has allowed more extensive amendments in other cases than the expansion that occurred here.    *See, e.g., United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 779 (9th Cir. 1986) (per curiam).    In *Sears*, the United States altered the superseding indictment in several ways, including changing charges from 18 U.S.C. § 542 to § 1001 and adding an additional parenthetical reference to dumping duties.    *Id.*    The Ninth Circuit concluded the new indictment did not expand the charges, notwithstanding the potentially greater penalty under § 1001, because the elements of § 1001 were included in § 542 and the reference to dumping duties did not "constitute a substantial change in the superseding indictment."    *Id.*    The court concluded Sears was aware of the United States' theory of prosecution "from the outset."    *Id.*; *see also United States v. Friedman*, 649 F.2d 199, 204 (3d Cir. 1981) (factual allegations in a superseding indictment did not change although some additional details were added); *United States v. Charnay*, 537 F.2d 341, 354 (9th Cir. 1976) (allowing refiling of an indictment with "approximately the same facts" if dismissed).

---

[1] Moreover, the charge for aggravated identity theft, count XI, is well within the statute of limitations.    Since that conduct is alleged to have occurred on November 30, 2018, the statute of limitations would not run for count XI until November 30, 2023.    The United States makes note of this timing because the facts have not been "obscured by the passage of time."    *Toussie v. United States*, 397 U.S. 112, 114 (1970).

Like the defendant in *Sears*, Marshall has been aware of the government's theory of prosecution since the return of the original indictment.    The superseding indictment added the charge of aggravated identity theft, which is well within the statute of limitations, and the second superseding indictment expanded the date of the wire fraud scheme for ease of presentation to the jury, but that did not materially broaden the charge.    For the sake of comparison, the Court can consider the government's actions in *Ratcliff*, where a conspiracy was expanded by 12 years, the drug amount was quadrupled, and the prosecution conceded at sentencing that Ratcliff "wasn't charged with what he was eventually convicted of on the superseding indictment."    *United States v. Ratcliff*, 245 F.3d 1246, 1254 (11th Cir. 2001).    Marshall has been charged throughout with the same wire fraud scheme and related acts of money laundering.    The second superseding indictment did not materially broaden those charges, and Marshall's motions to dismiss counts I-VII as time-barred (Docs. 162, 164) should be denied.

**B.    Money laundering in counts II-IV is properly charged, and Marshall's motion should be denied.**

Marshall correctly notes the identified wire in count I occurred on March 21, 2016.    (Doc. 167 at 1).    Given that counts II, III, and IV identify money laundering counts occurring one or two months *prior* to March 21, 2016, Marshall argues it is "impossible" for money laundering to exist because the charged wire had not yet occurred.    (Doc. 167 at 4).    Marshall's argument is legally and

factually incorrect.

A fraud scheme can generate proceeds for a money laundering conviction long before completion of the act that triggers federal jurisdiction.

> Because . . . money laundering does not focus on the specifics of the predicate offense, *it does not matter when all the acts constituting the predicate offense take place*.  It matters only that the predicate offense has produced proceeds in transactions distinct from those transactions allegedly constituting money laundering.

*United States v. Mankarious*, 151 F.3d 694, 706 (7th Cir. 1998) (emphasis added); *United States v. Nunez*, 419 F. Supp. 2d 1258, 1268 (S.D. Cal. 2005) ("[T]he law does not require that the underlying offense be completed before its proceeds may be laundered."); *United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994) ("[P]roceeds are derived from an already completed offense, *or a completed phase of an ongoing offense* . . . ." (emphasis added).); *United States v. Morelli*, 169 F.3d 798, 806 (3d Cir. 1999) ("We think the money was the proceeds of the *entire* ongoing fraudulent venture . . . ." (emphasis in original).); *United States v. Castellini*, 392 F.3d 35, 48 (1st Cir. 2004) ("'Proceeds' of an illegal activity 'may be created before the completion of an underlying on-going crime.'").

Marshall's claim that the money laundering charges in counts II-IV occurred one to two months before the March 21, 2016 wire that establishes federal jurisdiction is of no legal consequence.  Marshall is alleged to have received wires on "six separate occasions, all under the guise of funding missions described

by MARSHALL."   (Doc. 143 at 3).   This was an ongoing fraud that spanned

from 2013 until 2018 and included the receipt of $2,355,000.   (Doc. 143 at 3).

The interstate wire of $255,000 that occurred on March 21, 2016, was a fraction of

the total amount Marshall fraudulently obtained from John Doe.   (Doc. 143 at 3-

4).   Marshall then took the money for counts II-IV, "which was derived from

specified unlawful activity," and conducted monetary transactions that were more

than $10,000.   (Doc. 143 at 4-5).   The timing of the interstate wire identified in

count I is irrelevant, and nothing more is required to allege the money laundering

in counts II-IV.

Even if wire fraud was required to be fully completed prior to the money

laundering offense, including an interstate wire, that has factually occurred (and

been alleged), in this case.   *See, e.g., United States v. Savage*, 67 F.3d 1435, 1441

(9th Cir. 1995) ("Congress considered money laundering to be separate conduct

occurring after completion of the underlying offense."), *overruled by United States

v. Santos*, 553 U.S. 507, 514 (2008);[2] *cf. United States v. Sayakhom*, 186 F.3d 928,

941 (9th Cir. 1999) ("*Savage* does not require the court to instruct the jury that the

government must prove that the proceeds of the money laundering were derived

---

[2] In *Savage*, the Ninth Circuit applied an "across-the-board application of the
receipts definition," which is "inconsistent with *Santos*."   *United States v. Van
Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009) (explaining the distinction between
receipts and profits).

from prior, separate criminal activity."), *amended by United States v. Sayakhom*, 197 F.3d 959 (9th Cir. 1999).    The money laundering charges in counts II-IV all occur within the timeframe of the wire fraud scheme, including January 20, 2016, for counts II and III, and February 12, 2016, for count IV.    The grand jury was careful to describe that the money laundering for counts II-IV involved "specified unlawful activity, that is the wire fraud scheme as *described* in count I . . . ." (Doc. 143 at 4-5) (emphasis added).    This description included "wir[ing] of large sums of money on at least *six separate occasions*" that occurred between April 2013 and November 2018.    (Doc. 143 at 3-5) (emphasis added).

The grand jury used these words because it traces the evidence[3] the United States will present at trial, which is summarized below:

///

///

///

///

///

///

---

[3] The Court is bound by the four corners of the second superseding indictment. *See United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).    The United States therefore uses the facts as alleged in the second superseding indictment to explain the "evidence."

| Date | Count | Description |
|------|-------|-------------|
| February 3, 2015 | I | John Doe wired $750,000 to strike Syrian Terrorist Leaders, which is one of the "six" wires totaling "2,355,000" that were transmitted between April 2013 until December 2018.    (Doc. 37 at 14; Doc. 143 at 3). |
| January 20, 2016 | II | Marshall transferred $300,000 of the $750,000 to his Wells Fargo checking account from "the wire fraud scheme as described in count I" that spanned from April 2013 until December 2018.    (Doc. 37 at 14; Doc. 143 at 4). |
| January 20, 2016 | III | Marshall wrote a check to High Threat Concealment "drawn on his Wells Fargo Bank Account" in the amount of $300,000 from "the wire fraud scheme as described in count I" that spanned from April 2013 until December 2018. (Doc. 37 at 14; Doc. 143 at 4). |
| February 12, 2016 | IV | Marshall presented a check to Eisinger Motors in the amount of $37,697 from "the wire fraud scheme as described in count I" that spanned from April 2013 until December 2018.    (Doc. 37 at 14; Doc. 143 at 4). |

The flaw in Marshall's argument is best exposed by the rules that a defendant may be found guilty of money laundering without even personally committing the predicate offense, without a grand jury substantively charging the predicate offense, and even if the statute of limitations has already run on the predicate offense.[4]    *See, e.g., United States v. Richard*, 234 F.3d 763, 768-769 (1st

---

[4] Indeed, previous wires for Marshall's other "missions" were outside the statute of limitations when the grand jury returned the original indictment, although the subsequent money laundering counts – counts II-IV – were not.   The grand jury indicted Marshall on July 22, 2020.   (Doc. 2).   The fourth mission generated a wire on February 3, 2015, which was outside the statute of limitations.   (Doc. 37

Cir. 2000) (not requiring a conviction for the underlying unlawful activity); *United States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003) ("It is clear that a defendant may be convicted of money laundering even if she is not a party to, much less convicted of, the specified unlawful activity."); *United States v. Smith*, 46 F.3d 1223, 1234 (1st Cir. 1995) ("There is no requirement that the defendant must have committed the crime . . . from which the property was derived."); *United States v. Golb*, 69 F.3d 1417, 1429 (9th Cir. 1995) (explaining details of underlying unlawful activity need not even be alleged in the indictment charging money laundering); *United States v. Ross*, 2014 WL 3750452, n. 2 (N.D. Cal. 2014) (unpublished) (explaining no cited authority existed to require "money laundering charges to be filed within the statute of limitations for the offense on which the charges are predicated").    The United States must prove the underlying specified unlawful activity at trial, *see United States v. Anderson*, 391 F.3d 970, 976-977 (9th Cir. 2004), which here is wire fraud, but Marshall cannot cabin the government's case because the charged interstate wire occurred in March of 2016 while the interstate wire that produced the criminally derived property in counts II-

---

at 14); 18 U.S.C. § 3282(a) (explaining statute of limitations is five years); *but see United States v. James*, 955 F.3d 336, 342 (3d Cir. 2020) (explaining that wires outside of the statute of limitations may be used to prove a fraud that occurred within the statute of limitations).   The subsequent money laundering counts occurred after the wire transfer for the fourth mission, on January 20, 2016, and February 12, 2016, both of which were within the five-year statute of limitations.

IV occurred outside the statute of limitations.    The motion to dismiss counts II-IV (Doc. 166) offers an improper analysis of the law and should be denied.

    **C.    The indictment is not duplicitous, and Marshall's motion (Doc. 172) should be denied.**

Marshall argues the wire fraud in count I references two wires, which is duplicitous.    (Doc. 173 at 1-2).    He further contends that because the wire fraud charge is flawed, all charges based on the wire fraud are likewise flawed and must be dismissed.    (Doc. 173 at 5).

An indictment is duplicitous if it joins two or more distinct and separate offenses into a single count.    *United States v. Mancuso*, 718 F.3d 780, 792 (9th Cir. 2013).    Even if an indictment is duplicitous, a unanimity instruction may cure any defect.    *Id.*

The second superseding indictment charge of wire fraud is not duplicitous. It states as follows:

INTERSTATE WIRE

On or about March 21, 2016, at Whitefish, within Flathead County, in the State and District of Montana, the defendant, MATTHEW ANTHONY MARSHALL, for the purpose of executing the aforementioned scheme, knowingly caused to be transmitted in interstate commerce a wire communication*,* **specifically an online communication from John Doe in Montana to Wells Fargo Bank in California,** which prompted a wire transfer of $255,000 from Wells Fargo Bank in California to MARSHALL's checking account at Old National Bank in Indiana, account ending in 9053, in violation of 18 U.S.C. § 1343.

(Doc. 143 at 3-4).[5]    The wire communication at issue is identified "specifically"

as the communication from Montana to California, which establishes venue in

Montana, and is identified in bold above.    (Doc. 143 at 3); *see also* Fed. R. Crim.

P. 18 ("[T]he government must prosecute an offense in a district where the offense

was committed.").    To ensure the defendant was fully on notice, however, the

second superseding indictment explains how the wire communication from

Montana to California ultimately arrived at Marshall's bank account, which is from

California to Indiana, and is identified by underline above.

    The reference to Marshall's ultimate receipt of the money (California to

Indiana) was done by way of a nonrestrictive clause, meaning it is provided as a

parenthetical that is grammatically proper to ensure only one wire was charged.

> A clause is said to be restrictive (or defining) if it provides
> information that is essential to understanding the intended meaning of
> the rest of the sentence.    Restrictive clauses are usually introduced by
> that (or by who/whom/whose) and are never set off by commas from
> the rest of the sentence. . . .    *A clause is said to be nonrestrictive (or*
> *nondefining or parenthetical) if it could be omitted without obscuring*
> *the identity of the noun to which it refers or otherwise changing the*
> *intended meaning of the rest of the sentence*.    Nonrestrictive relative
> clauses are usually introduced by which (or who/whom/whose) and
> are set off from the rest of the sentence by commas.

*United States v. Nishiie*, 996 F.3d 1013, 1021-1022 (9th Cir. 2021) (quoting

---

[5] Marshall originally argued the superseding indictment's plural use of the word
"interstate wires" created confusion.    (*Compare* Doc. 140 at 2 *with* Doc. 173 at 4).
The second superseding indictment now references a singular "interstate wire" in
the heading to ensure no such confusion exists.    (Doc. 143 at 3).

Chicago Manual of Style § 6.27 (17th ed. 2017)) (emphasis added); *see also*

*Liberty Dialysis v. Kaiser*, 2018 WL 1801794, *5, n. 3 (D. Hawaii April 16, 2018)

("It also uses the nonrestrictive phrase 'which are included in the Medicare

composite rate,' suggesting that the information in the phrase is parenthetical in

nature and does not alter the essential meaning of the definition . . . .").    The

grand jury included the parenthetical denoting the transfer of the money from

California to Indiana by way of a nonrestrictive clause, but the "specific" wire

charged in count I is from Montana to California.    Had the United States not

identified how the money ultimately travelled to Marshall, it could have prompted

a bill of particulars and arguments that Marshall was on insufficient notice.    (*See*

Docs. 138 and 170 (arguing for a bill of particulars about method of proof for tax

evasion charges)).    Given that the grand jury's charge was grammatically correct,

and put Marshall on more than sufficient notice, there is no chance of juror

confusion at trial.    Even if confusion is possible, a unanimity instruction would

ensure no prejudice occurred.    *United States v. Payseno*, 782 F.2d 832, 836 (9th

Cir. 1986).[6]    The motion to dismiss (Doc. 172) should be denied.

---

[6] Marshall argues that if count I, the wire fraud, is legally insufficient, then counts
II-VII, and XI are likewise legally insufficient.    (Doc. 173 at 2).    That, however,
is incorrect.    The United States need not even charge wire fraud to charge money
laundering and aggravated identity theft.    *See Richard*, 234 F.3d at 768-769 (not
requiring a conviction for the underlying unlawful activity for money laundering);
*United States v. Lopez-Diaz*, 794 F.3d 106, 115 (1st Cir. 2015) (explaining the
United States is not required to even charge a defendant with the predicate felony

D.    **Marshall's argument that aggravated identity theft fell outside the wire fraud scheme is incorrect.**

Marshall argues "there was *no* possibility … the alleged aggravated identity theft in 2018 … facilitated the alleged wire fraud … in Count I."    (Doc. 169 at 3) (emphasis in original).    In doing so, he contends the evidence is insufficient to qualify as aggravated identity theft.    (Doc. 169 at 3).    While captioned as a motion alleging an error in the grand jury under Fed. R. Crim. P. 12(b)(3)(A)(v), Marshall's actual argument is based on his analysis of the facts.    *Id.*    An evidentiary-based motion is legally improper at this stage in the proceedings, but, more importantly, Marshall's assessment of the evidence is incorrect.

Count XI of the second superseding indictment states:

On or about November 30, 2018, at Whitefish, in Flathead County, in the State and District of Montana, the defendant, MATTHEW ANTHONY MARSHALL, did knowingly use, without lawful authority, a means of identification of another person, Jane Doe's name and email address (true name withheld to protect privacy), *during and in relation to a felony violation of 18 U.S.C. § 1343, wire fraud, as charged in count I*, in violation of 18 U.S.C. § 1028A(a)(1).

(Doc. 143 at 8-9) (emphasis added).

To sufficiently allege a charge, the grand jury need only find probable cause

_____

for aggravated identity theft); *United States v. Jenkins-Watts*, 574 F.3d 950, 970 (8th Cir. 2009) (same); *see also United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir. 1989) (per curiam) ("[A] defendant charged with violating section 924(c)(1) must be proven to have committed the underlying crime, but nothing in the statute or the legislative history suggests he must be separately charged with and convicted of the underlying offense.").

that the identity theft occurred "during and in relation to a felony violation of 18 U.S.C. § 1343, wire fraud, as charged in count I." (Doc. 143 at 8-9). It has done so, and nothing more is required. *See, e.g., Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury … if valid on its face, is enough to call for a trial of the charge on the merits."); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (stating that "'[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.'" (alteration in original)); *United States v. Hickey*, 367 F.3d 888, 893-894 (9th Cir. 2004) ("[D]istrict courts generally may not look behind an indictment before trial."), *amended by* 400 F.3d 658 (9th Cir. 2005); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam) ("There is no summary judgment procedure in criminal cases."). The motion to dismiss the aggravated identity theft count should be denied on this basis alone.

However, if the Court determines a preview of the evidence to be presented at trial is necessary to resolve Marshall's motion, the United States submits the following summary. Marshall lied about his background to John Doe. (Doc. 143 at 2-3). Marshall touted himself as a war hero, claiming he was a CIA operative and member of an elite special forces unit in the U.S. Marine Corps. (Doc. 143 at 2-3). In reality, Marshall was never in the CIA, was not part of First

Force Recon, and military records show he never saw combat.    Marshall was in the U.S. Marine Corps Reserves and worked at a recruiting station, but he was ultimately removed with an Other Than Honorable discharge due to "unsatisfactory participation in the Ready Reserve" by accumulating 82 unexcused absences.    Marshall appealed, claiming such a disposition would hinder his ability to work as a police officer and pursue a law degree.    The Discharge Review Board denied Marshall's requested relief and unanimously affirmed his Other than Honorable discharge.

The wire fraud in this case arose because Marshall touted his background to John Doe, and, in exchange, John Doe provided Marshall with "large sums of money," totaling $2,355,000, to help run "off the books" missions for the CIA. (Doc. 143 at 3).    Marshall never ran off the books missions as claimed.    Instead, he spent the money on "personal living expenses, personal travel, and loans and gifts to friends and associates."    (Doc. 143 at 3).

Part of a scheme to defraud includes holding onto ill-gotten gains.    *See, e.g., United States v. Feldman*, 853 F.2d 648, 654-655 (9th Cir. 1988) ("It is sufficient if the mailings were part of a scheme to defraud, in this case a scheme to keep the ill-gotten gains . . . ."); *United States v. Powell*, 576 F.3d 482, 492 (7th Cir. 2009) ("Because the property tax reduction allowed the schemers to keep more of their ill-gotten gains, it was part and parcel of the overall scheme to defraud.");

*United States v. Lee*, 427 F.3d 881, 894 (11th Cir. 2005) (explaining scheme to

defraud included providing misleading information "to either keep outright or to

retain for a lengthy period of time their ill-gotten gains").

In 2017 and 2018, John Doe and others became increasingly suspicious of

Marshall.   For example, on July 9, 2018, Marshall received text messages

challenging all of his representations about his educational and professional

background going back five years.   Marshall reacted the same day by conducting

the following search on his phone:   "What happens if you impersonate a CIA

agent in public?"   From August to October of 2018, still concerned his fraud

might be discovered, Marshall checked for his name on guardianofvalor.com/hall-

of-shame/ and searched for "Stolen Valor Act Punishment," "Stolen Valor Act

2017," and "Crime of Stolen Valor."

During that same time frame, Marshall emailed Mary Beth Long, former

Assistant Secretary of Defense for International Security Affairs, claiming they

needed to "start taking a body count" and to "destroy" John Doe.   On October 27,

2018, Marshall wrote Mary Beth Long that they had a lawyer who was a "rockstar"

but "bound by keeping within certain lines."   Marshall claimed they would have

to "blur those lines a bit to get some shit done quickly and effectively."   In an

attempt to discredit John Doe from reporting Marshall for committing the crimes in

this indictment, *i.e.*, "during and in relation to a felony violation of 18 U.S.C.

§ 1343, wire fraud, as charged in count I," Marshall created fake emails from John Doe's accountant, Jane Doe, to make it appear as if she were conspiring with John Doe to commit tax fraud.

On November 29, 2018, the day prior to submitting the fake emails to the IRS, Marshall searched on his phone, "how to clean metadata from a forwarded email."   The following day, November 30, 2018, Marshall submitted the fake emails from Jane Doe to the IRS.   If Marshall could convince federal investigators John Doe cheated on his taxes, it would make John Doe less credible as a victim of Marshall's wire fraud scheme.   Thus, Marshall would be able to keep his ill-gotten funds that totaled over $2.3 million.   The aggravated identity theft was critical to the attempted success of Marshall's wire fraud, and his motion to dismiss for failure to charge an offense (Doc. 168) should be denied.

### E.    Marshall's request for a bill of particulars should be denied.

Marshall argues he needs a bill of particulars to determine what method of proof the United States will use at trial for the tax charges.    (Doc. 171 at 5). While a bill of particulars might be necessary in a complex tax case, *United States v. Horton*, 526 F.2d 884, 887 (5th Cir. 1976), they are "seldom employed" in federal court, *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993). The decision to issue a bill is left within the "very broad discretion" of the Court. *Will v. United States*, 389 U.S. 90, 99 (1967).

Marshall received $2,355,000 that he did not put on his tax returns for the calendar year 2013 (resulting in a tax loss of $356,756), 2014 (resulting in a tax loss of $153,992), and 2015 (resulting in a tax loss of $294,714).    These amounts have been consistently identified in every indictment presented to the grand jury. The United States also produced in discovery the entire work-up of tax loss at the outset of the case, including the accompanying bank records.    The United States even filed an expert witness disclosure with the same calculations 11 months before trial, explaining the testimony that will be introduced.    (Doc. 31 at 2); *see also United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (explaining "[f]ull discovery also obviates the need for a bill of particulars").    To the extent it helps Marshall, the United States used the specific items method of proof.    The Ninth Circuit has described this approach as follows:

> The specific item method is . . . direct in its operation.    The usual strategy . . . is for the Government to produce evidence of the receipt of specific items of reportable income by the defendant that do not appear on his income tax return or appear in diminished amount.

*United States v. Marabelles*, 724 F.2d 1374, 1377 n. 1 (9th Cir. 1984).    A bill of particulars is not meant to be a discovery tool.    *See, e.g., Cooper v. United States*, 282 F.2d 527, 532 (9th Cir. 1960).    Nor is it meant to serve as a tactic to gain some advantage at trial or on appeal.    Marshall has:

- Full discovery demonstrating his receipt of $2,355,000 that he did not put on his tax returns as income;

- An expert report;

- The identified loss in each count;

- The date of each offense; and,

- The United States' explanation that it will prove the crime consistent with the specific item method of proof.

A bill of particulars is unnecessary, and Marshall's motion seeking one (Doc. 170) should be denied.

## CONCLUSION

For the foregoing reasons, Marshall's motions should be denied, and this matter should proceed to trial.

DATED this 25th day of October, 2021.

LEIF M. JOHNSON
Acting United States Attorney


*/s/ Timothy J. Racicot*
Assistant U.S. Attorney
Attorney for Plaintiff


*/s/ Ryan G. Weldon*
Assistant U.S. Attorney
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached response

contains 4,656 words, excluding the caption and certificate of compliance.

LEIF M. JOHNSON
Acting United States Attorney


*/s/ Timothy J. Racicot*
Assistant U.S. Attorney
Attorney for Plaintiff


*/s/ Ryan G. Weldon*
Assistant U.S. Attorney
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, a copy of the foregoing document was served on the following persons by the following means:

(1,2)  CM/ECF
( )     Hand Delivery
( )     U.S. Mail
( )     Overnight Delivery Service
( )     Fax
( )     E-Mail

1.     Clerk, U.S. District Court

2.     Justin K. Gelfand
        7700 Bonhomme Ave., Ste. 750
        St. Louis, MO 63105
        (314) 390-0234
        justin@margulisgelfand.com

                                LEIF M. JOHNSON
                                Acting United States Attorney


                                */s/ Timothy J. Racicot*
                                Assistant U.S. Attorney
                                Attorney for Plaintiff


                                */s/ Ryan G. Weldon*
                                Assistant U.S. Attorney
                                Attorney for Plaintiff